AF Approval S6 fwMC                     Chief Approval

## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                               CASE NO. 8:19-cr-388-T-35AEP

NELSON ISRAEL ALFARO

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Karin B. Hoppmann, Attorney for the United States for the Middle District of Florida, acting under authority conferred by 28 U.S.C. § 515, and the defendant, Nelson Israel Alfaro, and the attorney for the defendant, Henry Bell, Esq., mutually agree as follows:

**A.    Particularized Terms**

    1.    Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Seven of the Indictment. Count One charges the defendant with conspiracy to defraud the United States, obstruct justice, and make false statements to federal law enforcement officers, in violation of 18 U.S.C. § 371. Count Seven charges the defendant with making false statements to a federal law enforcement officer, in violation of 18 U.S.C. § 1001(a)(2).

Defendant's Initials _____

2.  Maximum Penalties

Counts One and Seven each carry a maximum sentence of five years' imprisonment, a fine of up to $250,000, a term of supervised release of not more than three years, and a special assessment of $100. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.  Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

First:     two or more persons in some way agreed to try to accomplish a shared and unlawful plan;

Second:    the Defendant knew the unlawful purposes of the plan—in this case, to defraud the United States, obstruct justice, and make false statements to federal law enforcement officers—and willfully joined in it;

Third:     during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and

Fourth:    the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

Defendant's Initials _____      2

The elements of Count Seven are:

First:     the Defendant made the statement, as charged;

Second:    the statement was false;

Third:     the falsity concerned a material matter;

Fourth:    the Defendant acted willfully, knowing that the statement was false; and

Fifth:     the false statement was made for a matter within the jurisdiction of a department or agency of the United States.

4.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

5.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that,

Defendant's Initials _____ 3

if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

6.   <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for

Defendant's Initials       4

acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7.   Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18

Defendant's Initials _____    5

U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.   Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

9.   Cooperation - Responsibilities of Parties

a.   The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any

Defendant's Initials _____          6

other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

      b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

      (1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

      (2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been

Defendant's Initials _____       7

dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)    The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

Defendant's Initials _N/V_____                    8

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

10.   Forfeiture of Assets

The defendant agrees to the civil forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), of $130,000 in U.S. currency, which represents the proceeds of a violation of 18 U.S.C. § 1503(a), the facts in support of which are described in the Factual Basis below.  In this regard, the United States shall have sole discretion to elect whether to proceed by way of civil judicial forfeiture or administrative forfeiture.  The defendant hereby waives any right to receive notice of any civil judicial or administrative forfeiture of the $130,000.  The defendant further agrees to take all steps

Defendant's Initials _____        9

necessary to complete this forfeiture, including, but not limited to, signing any additional documents (*e.g.,* a Consent to Forfeiture) before and after the defendant's sentencing hearing.  Also, not later than 14 days after execution of this plea agreement, the defendant shall tender to the United States a cashier's check or other monetary instrument acceptable to the United States in the amount of $130,000, made payable to the United States of America.  This check or monetary instrument shall be delivered to Anita Cream, Assistant United States Attorney, Asset Recovery and Victim Rights Division, United States Attorney's Office, Middle District of Florida, 400 N. Tampa Street, Suite 3200, Tampa, Florida 33602.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the $130,000, which constitutes proceeds of the defendant's violation of 18 U.S.C. § 1503(a).  Accordingly, the United States may solely rely upon the facts contained in this agreement in support of its civil judicial and/or administrative forfeiture of the $130,000.

The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine.  The defendant also waives any double jeopardy

Defendant's Initials ⟋⟍⟋⟍⟋⟍          10

challenges that the defendant may have as to any forfeiture actions arising out of the course of conduct that provides the factual basis for the Information in this case. Also, this forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

**B.    Standard Terms and Conditions**

    1.    Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the

Defendant's Initials           11

Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

Defendant's Initials _____          12

4.  Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.  Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United

Defendant's Initials       13

States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States

Defendant's Initials _____          14

Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to

Defendant's Initials _____         15

appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.      Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.      Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.      Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges

Defendant's Initials       16

defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials _____      17

11.  <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

From August 2017 through August 23, 2019, the defendant, Nelson Israel Alfaro ("Alfaro"), knowingly and willfully conspired with co-defendant Gilberto Eduardo De Los Rios ("De Los Rios") to (1) defraud the United States for the purpose of impeding, impairing, obstructing, and defeating—through deceit, craft, trickery, and dishonest means—the lawful governmental functions of the United States, that is the United States Attorney's Office for the Middle District of Florida in determining whether to file a 5K1.1 or Rule 35 motion to reduce a federal defendant's prison sentence, or anticipated prison sentence, based on substantial assistance provided by a third-party cooperator, and the United States District Court for the Middle District of Florida in deciding whether to grant a 5K1.1 or Rule 35 motion to reduce a federal defendant's prison sentence or anticipated prison sentence; (2) obstruct the administration of justice in a pending proceeding; and (3) make false statements to federal law enforcement officers.

Defendant's Initials _____       18

Section 5K1.1 of the United States Sentencing Guidelines ("5K1.1") and Rule 35(b) of the Federal Rules of Criminal Procedure ("Rule 35") sets forth the procedures by which a United States District Court can reduce a federal defendant's sentence for providing substantial assistance to the United States. In particular, 5K1.1 authorizes the United States to file a pre-sentence motion to reduce the defendant's sentencing guidelines range if the defendant provides substantial assistance in the investigation or prosecution of another person. Rule 35, on the other hand, authorizes the United States to file a post-sentence motion to reduce a defendant's sentence for providing substantial assistance to the United States in the investigation or prosecution of another person.

The United States Attorney's Office for the Middle District of Florida (hereinafter the "USAO MDFL")—the federal prosecuting authority in the Middle District of Florida—has the authority to determine whether a defendant provides substantial assistance to the United States and whether to file a motion to reduce the defendant's sentence pursuant to 5K1.1 or Rule 35. Typically, before filing a 5K1.1 or Rule 35 motion to reduce a defendant's sentence, the USAO MDFL requires the defendant to personally provide substantial assistance to the United States in its investigation or prosecution of another person for committing a crime. Accordingly, in the usual case, a

Defendant's Initials _____        19

defendant will personally provide substantial assistance to the United States and, as a reward for that assistance, the USAO MDFL will file a 5K1.1 or Rule 35 motion with the United States District Court for the Middle District of Florida (hereinafter the "U.S. District Court") to reduce the defendant's sentence.

With the approval of the USAO MDFL, however, a defendant may earn substantial assistance credit through the use of a third-party cooperator. Third-party cooperation is different from typical cooperation efforts because the defendant is not personally involved in providing substantial assistance to the United States. Instead, another person, referred to as the "third-party cooperator," assists the United States on behalf of the defendant. Usually, a third-party cooperator is a spouse, girlfriend, boyfriend, close friend, or family member of the defendant. In exchange for substantial assistance provided by the third-party cooperator for the benefit of the defendant, the USAO MDFL will file a 5K1.1 or Rule 35 motion with the U.S. District Court to reduce the defendant's sentence. If the USAO MDFL discovers there is no legitimate relationship between the defendant and the third-party cooperator, the USAO MDFL will not authorize the third-party cooperation effort or give the defendant any credit for that effort.

Defendant's Initials _____        20

Pursuant to the USAO MDFL's policy, the third-party cooperator cannot receive any personal benefit for providing substantial assistance to the United States. Rather, the defendant receives the benefit for the substantial assistance provided by the third-party cooperator. Pursuant to the USAO MDFL's policy, the use of a third-party cooperator will not be authorized if the defendant or someone acting on the defendant's behalf pays or promises to pay the third-party cooperator for his assistance. If the USAO MDFL discovers that a third-party cooperator has been paid a fee or promised payment of a fee for his efforts to earn a 5K1.1 or Rule 35 sentence reduction for a particular defendant, the USAO MDFL will refuse to file a substantial assistance motion for that defendant.

Without the filing of a 5K1.1 motion by the USAO MDFL, the U.S. District Court does not have the authority to depart downward from a defendant's sentencing guidelines range based on substantial assistance,[1] and without the filing of a Rule 35 motion by the USAO MDFL, the U.S. District Court does not have the authority to reduce a defendant's sentence based on substantial assistance to the United States.

---

[1]       Notwithstanding the lack of authority to depart downward under these circumstances, the U.S. District Court may nevertheless vary downward based on a defendant's cooperation with the United States.

Defendant's Initials           21

Alfaro is an attorney licensed to practice law in the State of Florida. He maintained law offices in Miami, Florida; Denver, Colorado; and Bogota, Colombia. Alfaro specializes in representing defendants in federal and state criminal cases. In particular, over the years, Alfaro has carved out a niche practice representing and facilitating the cooperation of defendants charged mostly with federal drug-trafficking crimes. Alfaro regularly practiced in the United States District Court for the Middle District of Florida.

On February 11, 2009, the State Attorney's Office for Miami-Dade County charged De Los Rios with attempted trafficking in cocaine. *See* Case No. F08042838A. Subsequently, on December 6, 2009, a federal grand jury in the Southern District of Florida returned an indictment against De Los Rios for conspiracy to distribute five kilograms or more of cocaine. *See* Case No. 1:09-cr-20989-KMM-2 (S.D. Fla.) (Doc. 3). The federal case proceeded first.

On February 3, 2010, De Los Rios pleaded guilty to the federal drug conspiracy charge. On April 6, 2010, while awaiting sentencing in his federal drug case, special agents with the Federal Bureau of Investigation ("FBI") interviewed De Los Rios in Miami, Florida. Alfaro attended De Los Rios's interview, even though he did not enter a notice of appearance in the

Defendant's Initials _____       22

federal case. Several weeks later, a federal judge in Miami sentenced De Los Rios to 57 months in prison.

After being sentenced in his federal drug case, De Los Rios was transferred back to state custody for prosecution in his state drug case. On August 25, 2010, Alfaro entered a notice of appearance in De Los Rios's state drug case. Ultimately, De Los Rios pleaded guilty to the state drug offense and was sentenced to 12 months and a day in Florida state prison.

De Los Rios cooperated with law enforcement. Consequently, the U.S. Attorney's Office for the Southern District of Florida filed a Rule 35 motion seeking a reduction in De Los Rios's sentence, which the federal district judge granted on October 24, 2011, resulting in a 19-month reduction in De Los Rios's federal prison sentence.

Based on Alfaro's education and vast experience as a criminal defense attorney, he was familiar with the process by which clients could legitimately earn substantial assistance credit. De Los Rios, in fact, had personal experience earning substantial credit for himself and reaping the rewards of that assistance. However, beginning in 2017, Alfaro and De Los Rios conspired to fraudulently obtain substantial assistance for a federal defendant through deceit, craft, trickery, and dishonest means.

Defendant's Initials _____          23

In early 2017, a federal grand jury in the Middle District of Florida returned an Indictment alleging violations of federal drug laws against a person known to the United States, but referred to in this plea agreement as the "Federal Defendant." A U.S. Magistrate Judge ordered the Federal Defendant detained pending the outcome of his federal drug case. While housed at a local jail in the Middle District of Florida and months before his sentencing hearing, the Federal Defendant began communicating with Alfaro about the possibility of obtaining a reduction in his anticipated prison sentence.

In particular, Alfaro offered, for a fee of approximately $80,000, to help the Federal Defendant obtain substantial assistance credit, thereby justifying a reduction in his anticipated prison sentence. To achieve this sentence reduction for the Federal Defendant, Alfaro concocted a plan to purchase information that would be of interest to law enforcement, which the Federal Defendant could fraudulently use to obtain cooperation credit. Alfaro explained to the Federal Defendant that he would charge $50,000 as his personal fee for this effort and an additional $30,000 to pay for the information that would earn the Federal Defendant substantial assistance credit. Alfaro's proposed non-legal services required him to enlist the aid of another person who could provide information valuable to law enforcement.

Defendant's Initials _____        24

In this case, Alfaro conspired with De Los Rios, a person unknown to the Federal Defendant, for De Los Rios to serve as the source of information. It was the shared objective of Alfaro and De Los Rios to use the information provided by De Los Rios to obtain substantial assistance credit for the Federal Defendant and, in doing so, a reduced sentence.

In August 2017, a U.S. District Judge sentenced the Federal Defendant to more than 10 years in prison. In September 2017, to further this substantial assistance scam, Alfaro advised the FBI about an unnamed Source of Information (the "Source") who could provide information about a drug dealer in South Florida. In fact, De Los Rios was the Source.

On September 5, 2017, Alfaro sent an email to FBI Special Agent Antonio Vargas. The purpose of the email was to discuss the upcoming proffer of the Federal Defendant which was scheduled—at that point—for September 13. Alfaro also previewed for Agent Vargas the type of information the Federal Defendant intended to present to the government:

> In regard to other information [the Federal Defendant] desires to share with you *he has advised us of the following topics*:
> \* \* \*
> 3. South Florida Cocaine Distribution network – *[the Federal Defendant] can provide information* related to a South Florida based cocaine dealer and network. Thru an anonymous source, *[the Federal Defendant] can provide* the name, telephone number, and vehicle tag information for a known cocaine dealer who sells ounces and quarter pound quantities of cocaine in South Florida. The dealer is himself supplied in quantities of 1

Defendant's Initials         25

or 2 kilos or more by his upline suppliers. In turn, those suppliers receive and redistribute ten or more kilos of cocaine at a time.

(Emphasis added). Nowhere in his email did Alfaro reveal that the "anonymous source" was his ex-client and a person with no relation to the Federal Defendant.

Alfaro's initial plan was to pass information from the Source (De Los Rios) to the FBI, attributing the Source's willingness to cooperate with law enforcement on a fictitious relationship between the Source, the Federal Defendant, and the Federal Defendant's girlfriend. Over time, the plan transformed into a plot to earn the Federal Defendant substantial assistance credit by having De Los Rios serve as a third-party cooperator for the Federal Defendant. De Los Rios, however, had no connection to the Federal Defendant.

Alfaro knew the USAO MDFL would not approve a third-party cooperator who had no connection to the Federal Defendant. As a result, Alfaro invented a story explaining the purported connection between De Los Rios, the Federal Defendant, and the Federal Defendant's girlfriend. In particular, Alfaro falsely represented to the FBI on multiple occasions that De Los Rios had previously dated the Federal Defendant's girlfriend. Alfaro falsely claimed that De Los Rios and the Federal Defendant's girlfriend lost touch, but then re-established contact after the Federal Defendant was charged

Defendant's Initials _____        26

in his federal drug case. Alfaro's story was untrue, and De Los Rios adopted that story as his own.

Alfaro promised to pay, and did in fact pay, De Los Rios for providing information about a Miami drug dealer and agreeing to serve as a third-party cooperator for the Federal Defendant. Alfaro and De Los Rios knew the USAO MDFL would not accept a third-party cooperator who was being paid by Alfaro, or anyone acting on Alfaro's behalf, to serve as a third-party cooperator.

Between August 2017 and May 2018, Alfaro met with an FBI undercover agent, who portrayed himself as a drug dealer from Puerto Rico. Alfaro met with the undercover agent believing him to be the person financially responsible for the services Alfaro and De Los Rios were providing to the Federal Defendant. Alfaro met with the undercover agent at various times and locations in the Middle District of Florida. In all, the FBI undercover agent paid Alfaro $70,000 for the substantial assistance scam.[2] After several of these payments, Alfaro paid De Los Rios a portion of his fee for serving as the source of information or third-party cooperator for the

---

[2]    In addition, Alfaro has custody and control of $130,000 in U.S. currency that constitutes proceeds of a violation of 18 U.S.C. § 1503(a). Alfaro is not an innocent owner of the subject funds and, accordingly, these funds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Defendant's Initials _____              27

Federal Defendant. During the course of the conspiracy, Alfaro paid De Los Rios between $25,000 and $30,000.

On November 22, 2017, Alfaro and Agent Vargas had a telephone conversation, which included a discussion about the restrictions on third-party cooperation. At the time of this call, Agent Vargas was located in Tampa, Florida. Agent Vargas explained that he wanted to obtain more information about the source of information so the USAO MDFL could complete a form to authorize third-party cooperation. On this call, Agent Vargas explained that the third-party cooperator could not get paid by anyone. Alfaro falsely confirmed that the source, referring to De Los Rios, was not getting paid by Alfaro or the Federal Defendant. When asked about the relationship between the source (De Los Rios) and the Federal Defendant, Alfaro responded that the source had a prior relationship with the Federal Defendant's girlfriend, which was completely fabricated. When asked about the source's motivation to assist the Federal Defendant, Alfaro responded, "friendship," even though De Los Rios and the Federal Defendant did not know each other and the only reason De Los Rios agreed to help the Federal Defendant was the promise of money.

On September 25, 2018, Agent Vargas called Alfaro on the telephone. During their conversation, Alfaro identified De Los Rios as the

Defendant's Initials           28

source. This was the first time Alfaro identified the source to the FBI. Alfaro

stated that De Los Rios was now willing to be signed-up as a source for the

FBI.

On or about October 31, 2018, Alfaro and De Los Rios met with

Agent Vargas in Tampa, Florida. The purpose of the meeting was to fill out a

"Third-Party Cooperator Application" for the Federal Defendant's case. The

introduction to the application explained:

> Pursuant to Rule 35 of the Federal Rules of Criminal
> Procedure and Section 5K1.1 of the United States Sentencing
> Guidelines, the United States may file a motion to reduce a
> defendant's sentence based on the defendant's substantial
> assistance to law enforcement. Typically, a defendant is expected
> to personally provide substantial assistance to law enforcement to
> earn cooperation credit. In limited circumstances, however, the
> United States may authorize a person to serve as a third-party
> cooperator for a defendant. When authorized by the United
> States, a third-party cooperator may work with law enforcement
> to earn substantial assistance credit for a defendant, thereby
> leading to a sentence reduction for the defendant.
>
> _To ensure that the relationship between the defendant and the_
> _third-party cooperator is legitimate, and that the third-party cooperator is_
> _working solely to earn cooperation credit_ for the defendant, the third-
> party cooperator applicant hereby makes the following
> representations to the United States (type or print legibly)[.]

(Emphasis added).

Alfaro completed the "Third-Party Cooperator Application" by

hand. De Los Rios affirmed the answers on the application. The application

listed De Los Rios as the proposed third-party cooperator and the Federal

Defendant's Initials _____ 29

Defendant as the person on whose behalf the third-party cooperator was agreeing to cooperate. The FBI met with De Los Rios because it had the authority, jurisdiction and responsibility to vet De Los Rios as a cooperator for the government, as it does in every case where cooperation is being proposed by a defendant or his third-party cooperator. Furthermore, the FBI met with De Los Rios in the context of his offer to provide cooperation in connection with illegal drug-trafficking activities, another matter within the jurisdiction of the FBI.

During their meeting with the FBI, Alfaro and De Los Rios made multiple, materially false representations in the Third-Party Cooperator Application, including:

(a)    Question #3 of the application asked: "Describe the nature of the relationship between the Defendant and the Third-Party Cooperator (for example, family member, close friend, acquaintance, criminal associate, etc.)?" Alfaro and De Los Rios falsely answered that De Los Rios was a close friend of the Federal Defendant's girlfriend, who they referred to in the application as the Federal Defendant's wife. In fact, De Los Rios had no prior relationship with the Federal Defendant and the Federal Defendant's girlfriend. Rather, Alfaro personally knew De Los Rios because he previously

Defendant's Initials _____

30

represented him in a criminal case, a material fact which neither Alfaro nor De Los Rios disclosed to the FBI.

(b)    Question #4 of the application asked: "Identify the person(s) who recruited the Third-Party Cooperator to assist law enforcement on behalf of the Defendant, and describe the Third-Party Cooperator's relationship with such person(s)." Alfaro and De Los Rios falsely answered that the Federal Defendant's girlfriend, referred to as his wife, was a close friend of De Los Rios and recruited him to serve as a third-party cooperator for the Federal Defendant. In fact, Alfaro recruited De Los Rios to assist the Federal Defendant in his substantial assistance effort.

(c)    Question #8 of the application asked: "Is the Third-Party Cooperator assisting law enforcement solely to earn cooperation credit for the Defendant?" Alfaro and De Los Rios checked the box answering this question "Yes," which they knew was false. In fact, De Los Rios only agreed to assist the Federal Defendant because he expected to be paid.

(d)    Question #9 of the application asked: "Has the Third-Party Cooperator received, directly or indirectly, any money, real property, item of value (for example, jewelry, vehicles, boats, drugs, firearms, electronics, or stocks), or any other benefit (for example, debt forgiveness or interest in a business) from the Defendant or any other person for serving as or

Defendant's Initials                 31

agreeing to serve as a Third-Party Cooperator for the Defendant?" Alfaro and De Los Rios checked the box answering this question "No," which they knew was false. In fact, De Los Rios had already received partial payment for agreeing to assist the Federal Defendant in his substantial assistance effort.

(e)     Questioned #11 of the application asked: Does the Third-Party Cooperator expect to receive, or has anyone agreed or promised to give the Third-Party Cooperator, now or at some time in the future, any money, real property, item of value (for example, jewelry, vehicles, boats, drugs, firearms, electronics, or stocks) or any other benefit (for example, debt forgiveness or interest in a business) for serving as or agreeing to serve as a Third-Party Cooperator for the Defendant?" Alfaro and De Los Rios checked the box answering this question "No," knowing that this was false. In fact, Alfaro had promised to pay De Los Rios for assisting with the Federal Defendant's substantial assistance effort.

At the end of the Third-Party Cooperator Application, directly above the signature line for the third-party cooperator applicant (for De Los Rios), it warned:

> The representations contained in this Third-Party Cooperation Application are material to the United States' decision to approve or deny the request of the applicant to serve as a Third-Party Cooperator. The use of the applicant as a Third-Party Cooperator may ultimately lead the United States to file a Rule 35 Motion or 5K1.1 Motion for the Defendant, and a United States District

Defendant's Initials                     32

Judge may rely upon the United States' motion to reduce the Defendant's sentence.

Both De Los Rios and Alfaro signed the Third-Party Cooperator Application, affirming that all of the information contained therein was true and correct, while knowing they had made multiple, materially false representations in the application.

On March 18, 2019, Alfaro and the Federal Defendant's girlfriend had a telephone call. During their call, Alfaro warned the Federal Defendant's girlfriend that the FBI might confront her about her connection with De Los Rios. In particular, Alfaro warned that the FBI might call her with De Los Rios in the room. Alfaro wanted the Federal Defendant's girlfriend to be able to recognize De Los Rios's voice, so he advised that De Los Rios would be calling her soon. Alfaro coached the Federal Defendant's girlfriend to falsely represent to the FBI that she had a sentimental relationship with De Los Rios, De Los Rios later went to jail, and when the Federal Defendant had his problems, she got in touch with De Los Rios, and De Los Rios referred her to Alfaro. Alfaro added that De Los Rios was willing to help the Federal Defendant because of the prior relationship between De Los Rios and the Federal Defendant's girlfriend. This story was untrue.

Two weeks later, on April 1, 2019, De Los Rios called the Federal Defendant's girlfriend. He introduced himself to her for the first time.

Defendant's Initials           33

During this telephone call, De Los Rios told the Federal Defendant's girlfriend he was calling on behalf of Alfaro. De Los Rios advised that he was going to help the Federal Defendant. De Los Rios warned, however, that he would be calling the Federal Defendant's girlfriend at a later date—presumably with the FBI—and she would have to pretend that they had not spoken in a while. De Los Rios commented that whenever he calls the Federal Defendant's girlfriend, she should say, "Shit, it's been a while since we've talked." De Los Rios told the Federal Defendant's girlfriend to say his name—"Gilberto"—to make sure she knew it.

On April 22, 2019, Alfaro and the Federal Defendant's girlfriend spoke on the telephone. Alfaro said he wanted the Federal Defendant's girlfriend and De Los Rios to be on the same page about when they met. Alfaro coached the Federal Defendant's girlfriend to tell the FBI that she met De Los Rios before and they used to have a relationship. Alfaro further instructed her to say that because she knew De Los Rios had similar criminal problems, she "reached out to Kiko and inquired for his assistance." Alfaro told the Federal Defendant's girlfriend to lie about De Los Rios recommending Alfaro to assist with the Federal Defendant's case. Alfaro instructed the Federal Defendant's girlfriend to call Kiko and coordinate the timeline with him.

Defendant's Initials ____       34

Later that same day (April 22, 2019), De Los Rios and the Federal Defendant's girlfriend spoke on the telephone. The Federal Defendant's girlfriend told De Los Rios that they needed to figure out a date when they met and when they saw each other again. De Los Rios said the agents were not asking, but "we met one or two years ago. And that we no longer have communication with each other. Don't get nervous." De Los Rios also told the Federal Defendant's girlfriend that if the agents ask her where they met, to tell them they met in Miami. De Los Rios instructed the Federal Defendant's girlfriend to tell the FBI that he is not getting paid and he is just doing a favor. De Los Rios told the Federal Defendant's girlfriend that the FBI asked if he was being paid with some property, boat, or money and he told the agents he was not getting paid and was only doing a favor for the Federal Defendant's girlfriend. De Los Rios reiterated at the end of the conversation that if anyone asked the Federal Defendant's girlfriend any questions, to tell the agents what De Los Rios instructed her to say.

Later that same day, on April 22, 2019, Alfaro and the Federal Defendant's girlfriend spoke again on the telephone. During their conversation, Alfaro instructed the Federal Defendant's girlfriend not to tell the FBI that De Los Rios got paid to help the Federal Defendant.

Defendant's Initials                     35

By trying to convince the USAO MDFL to file a 5K1.1 or Rule 35 motion for the Federal Defendant under false and fraudulent pretenses, Alfaro's and De Los Rios's ultimate goal was to defraud the U.S. District Court into granting that substantial assistance motion and reducing the Federal Defendant's prison sentence.

Defendant's Initials _____          36

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 22nd day of October, 2019.

KARIN B. HOPPMANN
Attorney for the United States,
Acting Under Authority Conferred
By 28 U.S.C. § 515

Nelson Israel Alfaro
Defendant

Simon A. Gaugush
Assistant United States Attorney
Deputy Chief, Criminal Division

Henry Bell, Esq.
Attorney for Defendant

Josephine W. Thomas
Assistant United States Attorney
Chief, Criminal Division